******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

BEAR, J., dissenting. I respectfully dissent from the majority opinion. The plaintiff, Angel Huang Do, sets forth two claims in her appeal. The first is that this court should reverse the trial court's judgment because the hearing officer abused his discretion by overruling the plaintiff's objection to the admissibility of unreliable evidence in an A-44 form that was copied from a prior arrest. The second is that this court should reverse the court's judgment because there was not substantial reliable evidence to determine that the plaintiff operated "the motor vehicle" as required under General Statutes § 14-227b (g) (4). A more specific statement of the second claim raised by the plaintiff is that because of errors in the A-44 form and the investigation report completed by state police Trooper Troy M. Biggs (exhibit), the hearing officer did not have a sufficient evidentiary basis on which to determine that the plaintiff was operating a 2007 Audi with a Massachusetts registration or a 2006 Mercedes-Benz with a Connecticut registration at the time of her arrest, and the trial court, thus, should have reversed the decision of the defendant, the Commissioner of Motor Vehicles (commissioner).

I disagree with each of her claims. The plaintiff's statement of her first issue is as follows: "Whether the Superior Court erred by finding the A-44 form and attached police narrative were sufficiently reliable to be admissible for purposes of [§ 14-227b (g)] when the documents contained information that the arresting officer copied and pasted from a different stop and arrest that did not involve the plaintiff?"[1] The plaintiff did not offer any evidence in the hearing as a basis for, or otherwise in support of, her assertion that the documents contained information that the arresting officer copied and pasted from a different stop and arrest that did not involve the plaintiff, and with respect to her second issue, that the reference to the 2007 Audi appeared in a prior A-44 form. Specifically, the plaintiff did not offer the alleged prior A-44 form that she referred to and relied on in support of her claims as an exhibit in the hearing. The plaintiff's attacks on the substance and admissibility of the exhibit admitted by the hearing officer, thus, are grounded solely in speculation or otherwise unsupported by evidence. In the absence of any evidence to support her arguments, there was no reason or basis for the hearing officer to entertain them or for him not to accept and admit the exhibit proffered by the Department of Motor Vehicles (department) as a full exhibit, with any arguments about its contents going to weight. See, e.g., *Beverly Hills Concepts, Inc.* v. *Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 78, 717 A.2d 724 (1998) (when plaintiff fails to remove question of damages from realm of spec-

ulation, recovery is denied "not for lack of 'mathematical exactitude' . . . but because the plaintiff failed to provide sufficient evidence" [citation omitted]); *Mountaindale Condominium Assn., Inc.* v. *Zappone*, 59 Conn. App. 311, 316, 757 A.2d 608 ("a party may not rely on mere speculation or conjecture as to the true nature of the facts" [internal quotation marks omitted]), cert. denied, 254 Conn. 947, 762 A.2d 903 (2000). The plaintiff, therefore, has no legal basis on which to advance or support her claims on appeal, and we should affirm the judgment of the court without further considering her unsubstantiated claims.

To the extent that the plaintiff's claims solely relate to the internal inconsistencies within the exhibit, and that, as a result thereof, all of the information within the documents is inherently unreliable, the inconsistencies are generally identifiable as scrivener's or word processing errors, or other errors of form, and, conversely, a large and undisputed portion of the exhibit is clearly identifiable as describing or relating to the plaintiff and her actions, and thus is substantial and reliable.

If the hearing officer was required to give consideration to the plaintiff's arguments that the inconsistencies in the exhibit were sufficient to prohibit its admission and to prevent the identification of the vehicle that she was operating, the hearing officer reasonably could have found that the inconsistencies identified by the plaintiff demonstrated that most of the alleged errors in the exhibit could be identified and segregated from the remainder that actually related to the plaintiff's offense and the traffic stop by Biggs. The court did not err in determining that the hearing officer did not act unreasonably, arbitrarily, illegally, or outside the scope of his discretion in accepting and admitting the exhibit as a full exhibit, or in determining that the remaining uncontested information in the exhibit provided sufficiently reliable information for his statutory findings.[2] The hearing officer's decision that the exhibit was sufficiently reliable to warrant its admission, and that any issues with respect to it, or portions of it, went to the weight to be given, therefore, was not unreasonable, arbitrary, illegal, or an abuse of discretion. See *Roy* v. *Commissioner of Motor Vehicles*, 67 Conn. App. 394, 397, 786 A.2d 1279 (2001).

Further, specifically with respect to the vehicle identity issue, the error identified by the plaintiff about the listing of the Audi on page one of the A-44 form is, in the full context of the exhibit, insufficient to have required the court to conclude that it was arbitrary, illegal, or an abuse of discretion for the hearing officer to have admitted as evidence the full exhibit, or for us to determine that the court erred in affirming the hearing officer's finding that it contained substantially reliable evidence that the plaintiff was operating a motor vehicle at the time of her offense and subsequent arrest. See

*Solomon* v. *Connecticut Medical Examining Board*, 85 Conn. App. 854, 860, 859 A.2d 932 (2004) ("The present appeal is from the decision of the trial court. We review that decision only to determine whether it was rendered in accordance with the [Uniform Administrative Procedure Act, General Statutes § 4-166 et seq.)]." [Internal quotation marks omitted.]), cert. denied, 273 Conn. 906, 868 A.2d 748 (2005).

The court's memorandum of decision, with which I generally agree,[3] contains the following findings and discussion of the issues in this case: "The plaintiff . . . appeals from the final decision of the [commissioner] suspending the plaintiff's driver's license for ninety days for operating a motor vehicle with an elevated blood alcohol level. For the following reasons, the court rejects several of the plaintiff's claims but remands the appeal to the commissioner for further articulation on one of them.

"State regulations provide that written police reports are admissible at license suspension hearings if they comply with subsection (c) of General Statutes § 14-227b. Regs., Conn. State Agencies § 14-227b-19 (a). Section 14-227b (c), which is part of our implied consent law, requires a police report to be 'subscribed and sworn to under penalty of false statement as provided in [General Statutes §] 53a-157b by the arresting officer.' General Statutes § 14-227b (c). 'Compliance with § 14-227b (c) is designed to provide sufficient indicia of reliability so that the report can be introduced in evidence as an exception to the hearsay rule, especially in license suspension proceedings, without the necessity of producing the arresting officer.' . . . *Bialowas* v. *Commissioner of Motor Vehicles*, 44 Conn. App. 702, 712, 692 A.2d 834 (1997).

"In this case, the A-44 [form] contains the April 26, 2014 electronic sworn signature under penalty of false statement of Trooper Troy M. [Biggs] as the 'arresting officer.' The signature box refers to the report itself and 'any attachments' thereto. The attached investigation report contains the April 26, 2014 electronic sworn signature of Trooper [Biggs] as the 'investigator.' These reports thus comply with the statute and provided sufficient reliability to justify their admission at the license suspension hearing in this case. See General Statutes § 14-227b (c) ('[t]he Commissioner of Motor Vehicles may accept a police report under this subsection that is prepared and transmitted as an electronic record, including electronic signature or signatures').

"That reliability is not negated by the plaintiff's claims of discrepancies in the date of arrest and the identity of the motor vehicle that the plaintiff drove. The plaintiff raised both these claims before the hearing officer, thus giving the hearing officer an opportunity to consider them and exercise his discretion concerning the admissibility of the report.

"Under the applicable abuse of discretion standard, no abuse of discretion occurred here. See *Murphy* v. *Commissioner of Motor Vehicles*, 254 Conn. 333, 343, 757 A.2d 561 (2000); [see also] General Statutes § 4-183 (j). There is no dispute that the motor vehicle stop took place shortly after midnight on April 24, 2014. Page one of the A-44 [form] shows a typewritten but crossed out notation of the incident date as '04/23/2014.' In handwriting, the date of '04/24/14' is added with initials that the commissioner concedes are those of Sergeant Ryan M. Hennessey, who the report indicates administered the oath but was not the sworn, arresting officer. The report, therefore, does contain this amount of unsworn information, which was improper. However, pages one and two of the A-44 [form] contain four references to the arrest and breath tests taking place in the early morning hours of '04/24/2014.' The investigation report then makes six references to the incident and investigation taking place on April 24. Under these circumstances, the hearing officer could reasonably have concluded that the initial notation of '04/23/2014' was a scrivener's error due to fact that the arrest took place shortly after midnight and that this error did not negate the overall reliability of the report.

"The same is true of the discrepancy with regard to the motor vehicle in question. Page one of the A-44 [form] lists the motor vehicle as a 2007 Audi with a Massachusetts registration. In the 'Property' section of the investigation report, however, the motor vehicle is identified as a white 2006 Mercedes-Benz with Connecticut registration 344-ZB0. The narrative of the report states: 'A 911 caller described the vehicle as a white Mercedes-Benz bearing CT registration 344-ZBO. I observed this vehicle traveling northbound . . . . I activated my overhead emergency strobe lights, sirens and wig-wag headlights. The vehicle pulled over. . . . I never lost sight of the vehicle from my initial observation to the stop.' Although the reports thus contain conflicting evidence concerning the motor vehicle that the plaintiff operated, that conflict does not negate the overall reliability of the report, which otherwise meets the statutory and regulatory criteria. Rather, the conflict simply creates a fact or credibility issue for the hearing office to resolve. 'It is within the province of the hearing officer to determine the credibility of evidence.' *Roy* v. *Commissioner of Motor Vehicles*, [supra, 67 Conn. App. 397]. Therefore, the hearing officer did not abuse his discretion in admitting the report.

"The plaintiff also relies on the discrepancy concerning the motor vehicle to attack the adequacy of the hearing officer's fourth finding that the plaintiff 'was operating the motor vehicle.' Ordinarily, our appellate courts have narrowly construed the four statutory issues that a hearing officer must address in a license suspension hearing. See *Fishbein* v. *Kozlowski*, 252

Conn. 38, 47, 743 A.2d 1110 (2000); [see also] General Statutes § 14-227b (g). Further, the regulations cited by the plaintiff appear to require hearing officers only to make these four findings and do not specifically require a hearing officer to make any supporting findings of fact. See Regs., Conn. State Agencies §§ 14-227b-20 (a) [and] 14-227b-23. In this case, however, the court cannot evaluate the plaintiff's claim that there was not substantial evidence to support the finding that the plaintiff 'was operating the motor vehicle' without knowing which motor vehicle the hearing officer concluded that the plaintiff operated. For the court to assume one vehicle or the other would amount to improper speculation. Therefore, the court must remand the case to the hearing officer pursuant to General Statutes § 4-183 (j) to articulate which car he concluded that the plaintiff was operating and to add any other findings that he deems appropriate.

"Accordingly, the court remands the case to the hearing officer for further articulation. The court retains jurisdiction over the appeal."

I disagree with the majority's determination that the exhibit as a whole was unreliable. One of the reasons for my disagreement is that there were numerous areas of overlap between the A-44 form and Biggs' attached investigation report and the results of the breath analysis tests, which suggest that much of the information in the A-44 form is reliable. Considering just those places on page one of the A-44 form that correspond to information within the investigation report, I note that both documents give the same or fundamentally similar information for the following items: the police case number; the location and time of the traffic stop; the race, sex, birthday, and address of the plaintiff; that the plaintiff failed the same three field sobriety tests in virtually the same manner;[4] that the plaintiff indicated that she had no physical injuries; and that she was apprised of her *Miranda*[5] rights at 12:43 a.m.

Further, although the majority rightfully observes that the second page of the A-44 form was not originally included in the return of the administrative record submitted to the court, there is no claim that the hearing officer did not have the full report at the time that he rendered his decision. With respect to the court's consideration of the second page of the A-44 form, the full copy of the form was submitted initially as an exhibit with the plaintiff's June 30, 2014 appeal to that court. Further, the supplement to the administrative record was filed by the commissioner on December 17, 2014; therefore, the court was in possession of it both at the time that it heard the appeal on January 30, 2015, and when it filed its memorandum of decision less than a week later. The court also clearly considered the second page of the A-44 form, as it explicitly referenced portions of that page in its memorandum of decision.[6]

Factoring in this second page increases the number of commonalities between the two documents. In particular, both documents provide the same following information: that the plaintiff neither had diabetes nor was on medication;[7] the number and type of drinks that the plaintiff had consumed; the time that the plaintiff was afforded the opportunity to contact an attorney; and the date, time, and results of the breath analysis tests.[8]

Finally, I do not attribute the same weight as the majority does to the handwritten notations. Assuming that the handwritten notations were an improper alteration of the A-44 form, it would be reasonable to assume, as the trial court did, that those annotations, which are accompanied by the initials "RH," all refer to Sergeant Ryan M. Hennessey, who is listed on both the A-44 form and the attached narrative as Biggs' supervisor and the individual who administered the oath to Biggs.[9] I also note that both notations are handwritten, while the remainder of the A-44 form, including the electronic signatures of both Biggs and Hennessey, was typed, and that there are no other indications that the document had been altered beyond those two places. Additionally, the subject matter addressed by each of these notations readily and fairly can be determined to be scrivener's or word processing errors.[10]

Another state's appellate court has defined reliable evidence as "dependable evidence that has a reasonable probability of being true . . . ." *Franklin County Sheriff* v. *Frazier*, 174 Ohio App. 3d 202, 208, 881 N.E.2d 345 (2007). The substantive statements and arguments of the plaintiff's attorney at the hearing were not evidence requiring the hearing officer to find that there was not sufficient reliable evidence in the exhibit to keep it from being admitted, nor was the plaintiff's identification of inconsistencies in the exhibit of a nature sufficient to require such a finding. On the record before it, the court, therefore, did not err in determining that the hearing officer had not acted unreasonably, arbitrarily, or illegally, or that he had abused his discretion in determining that the exhibit was sufficiently reliable to warrant its admission.

I disagree, however, with the court's remand order. There is no need for this matter to be remanded to the hearing officer because it is clear from a fair reading of the exhibit that the plaintiff was operating the 2006 Mercedes-Benz at the time of her arrest, and that the sole reference to the 2007 Audi is in the nature of a scrivener's, typographical, or word processing error. See, e.g., *State* v. *Browne*, 291 Conn. 720, 733–37, 970 A.2d 81 (2009); *D'Amico* v. *Dept. of Correction*, 73 Conn. App. 718, 727–30, 812 A.2d 17 (2002), cert. denied, 262 Conn. 933, 815 A.2d 132 (2003). The Audi is mentioned only once on the first page of the A-44 form. The Mercedes-Benz is mentioned twice on page one of the

attached investigation report by Biggs, first in the vehicle description portion of the report and again in the narrative portion of the report, in a context that establishes that it is the vehicle that was being operated by the plaintiff at the time of her offense and traffic stop by Biggs: "A 911 caller described the vehicle as a white Mercedes-Benz bearing CT registration 344-ZBO. I observed this vehicle traveling northbound, failing to maintain its proper lane . . . swerving over the solid double yellow line onto the southbound side of the roadway. . . . I never lost sight of the vehicle from my initial observation to the stop." On page two of the report, Biggs wrote that "upon approaching the vehicle (CT 344-ZBO)," he observed the plaintiff "seated in the operator's position, with the vehicle's engine at an idle." Thereafter, the plaintiff "was asked to exit and step to the rear of her vehicle . . . ."[11]

The plaintiff did not testify or offer any other evidence at the hearing. She did not make any claim to the hearing officer that these facts were inaccurate or from a prior report. There is nothing in the record to challenge or contradict these facts set forth by Biggs. Put in this context, it is obvious that "the motor vehicle" the plaintiff was operating was the 2006 Mercedes-Benz when she was first observed by the 911 caller and thereafter observed and stopped by Biggs. Because the sole reference to the 2007 Audi is in the nature of a typographical, word processing, or other error of form, and because of the observations of the 911 caller and Biggs of the Mercedes-Benz, and Biggs' observations of the plaintiff in the Mercedes-Benz after he stopped that vehicle, the identity of the vehicle that the plaintiff was operating is not in dispute. Thus, it was not necessary for the court to remand the vehicle identity issue to the hearing officer so that he can state the obvious: that the plaintiff was operating the Mercedes-Benz when her offenses were allegedly committed and when she was stopped by Biggs. See, e.g., *State* v. *Zayas*, 195 Conn. 611, 620, 490 A.2d 68 (1985) ("[i]t is an abiding principle of jurisprudence that common sense does not take flight when one enters a courtroom").

It is clear from the exhibit that the plaintiff was the person operating the motor vehicle, the motor vehicle in question was the Mercedes-Benz and not the Audi, and the plaintiff did not specifically challenge the other statutorily required findings made by the hearing officer in this appeal.[12] On this basis, I agree with the commissioner that the appropriate course of action would be to reverse the judgment of the trial court and remand the case with direction to dismiss the plaintiff's appeal. Therefore, I respectfully dissent.

[1] In the plaintiff's statement of facts and proceedings, she states that her appeal "arises out of a state police officer copying material information from a prior unrelated drinking and driving arrest," and that "in drafting the documents, the arresting officer copied information from a prior unrelated arrest and swore to its accuracy." In her first argument, the plaintiff also asserted that "material information contained in the A-44 form and

attached narrative was copied from a prior unrelated arrest," and that "[t]his court should reverse the Superior Court's decision that the A-44 form and attached narrative were reliable and admissible because the arresting officer copied material information from a prior unrelated arrest and used the copied information in the A-44 form and attached narrative in the plaintiff's case." The plaintiff also asserts, without proof, that the arresting officer copied the field sobriety test results from a prior arrest. Finally, there are other assertions and assumptions by the plaintiff for which proof is lacking.

[2] General Statutes § 14-227b (g) provides in relevant part: "The hearing shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis or did such person submit to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicated that such person had an elevated blood alcohol content; and (4) was such person operating the motor vehicle."

The hearing officer found that the department had proved that: probable cause existed to arrest the plaintiff for a violation specified in § 14-227b; the plaintiff was placed under arrest; the plaintiff had submitted to the breath analysis test and the plaintiff was over the legal limit; and the plaintiff was operating "the motor vehicle." The plaintiff's initial appeal alleged fifteen errors by the hearing officer, including that there was insufficient reliable evidence to establish probable cause to arrest the plaintiff based on the field sobriety tests conducted by Trooper Biggs. Before the Superior Court and this court, however, the plaintiff has addressed the field sobriety tests only in her arguments that the exhibit is, as a whole, unreliable, and has argued that the department had not established that there was substantial and reliable evidence that the plaintiff was the operator of "the motor vehicle" as required by § 14-227b (g) (4) as a separate, if related, ground. Therefore, the plaintiff has not separately challenged on appeal the hearing officer's findings made with respect to § 14-227b (g) (1), (2), or (3) beyond contesting the admissibility of the exhibit.

[3] As I explain later in this opinion, I do not agree with the court that a remand was necessary in this case.

[4] Bigg's account of two of these field sobriety tests—specifically, the walk and turn and one leg stand tests—are exactly the same. Although his narrative account concerning the horizontal gaze nystagmus test indicates that the plaintiff "exhibited 6 out of 6 clues" of intoxication, while the A-44 form only lists three clues, these discrepancies are reconcilable as the investigative report notes that these clues applied to both eyes.

[5] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[6] In particular, the trial court noted that the A-44 form contained the electronic sworn signature of Biggs as the arresting officer, that the field referred both to the report and any attachments, and that both "pages one *and two* of the A-44 [form] contain four references to the arrest and breath tests taking place in the early morning hours of '04/24/2014.' " (Emphasis added.)

[7] The A-44 form has this information in "Section D," titled "Post Arrest Interview," while the investigative report has this information in the section labeled "Phase III Pre-Arrest Screening." This discrepancy, however, is minor.

[8] The attached results of the breath analysis tests confirm the date, time, and results of these tests as well.

[9] Contesting the admissibility of the exhibit during the proceeding before the hearing officer, the plaintiff's attorney stated: "The initials appear to be 'RH,' which I would guess would be Ryan Hennessey and not Troy Biggs."

[10] With respect to the altered date, both documents, as the court noted, indicate that the incident took place less than one-half hour after midnight; therefore, any mistake as to the date would be understandable. Page one of the A-44 form also lists the date of arrest as April 24, 2014. With respect to the annotation crossing out the name "David Helt" as a witness to the fact that the plaintiff refuse a drug test, the name is otherwise unaccompanied by any typed or handwritten information concerning a badge number or a signature in the related fields of "Section J" of the A-44 form. Additionally, the remainder of the A-44 form, the investigative report, and the results of the breath analysis tests all make clear that the plaintiff did not refuse the test and that the test was administered.

[11] The record does not contain any challenge by the plaintiff to these

statements.

¹² See footnote 2 of this dissenting opinion.

––––––––––––––––––